UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN M. SMITH,<br><br>            Plaintiff,<br><br>       v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>            Defendant. | NO. EDCV 09-2014 SS<br><br>**MEMORANDUM DECISION AND ORDER** |

**I.**

**INTRODUCTION**

Plaintiff Kevin M. Smith ("Plaintiff") brings this action seeking to reverse and remand the decision of the Commissioner of the Social Security Administration (the "Commissioner" or the "Agency") denying his application for Supplemental Security Income ("SSI") benefits. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

\\

## II.

### PROCEDURAL HISTORY

On March 27, 2007, Plaintiff filed an application for SSI benefits, alleging disability beginning on December 1, 2006. (AR 115). Plaintiff alleged disability on the basis of knee pain, diabetes, blindness in his left eye, hypertension, seizures, Hepatitis C, and Depressive disorder with psychotic features. (Id.).

The Agency denied Plaintiff's claim for benefits initially on March 3, 2007, and upon reconsideration. (AR 46-52, 55-59). Plaintiff subsequently requested and was granted a hearing before Administrative Law Judge ("ALJ") Lowell Fortune on March 11, 2009. (AR 63, 71, 74). At the hearing, Plaintiff appeared with counsel and testified, as did medical expert Dr. Michael Kania and vocational expert ("VE") David A. Rinehart. (AR 24).

On July 27, 2009, the ALJ issued a decision denying benefits. (AR 9-20). Plaintiff sought review of this decision before the Appeals Council. (AR 5). On September 23, 2009, the Appeals Council denied review and the ALJ's decision became the final decision of the Commissioner. (AR 1-3, 5). On October 23, 2009, Plaintiff commenced the present action.

\\
\\
\\
\\
\\

## III.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. § 404.1520.  The steps are:

(1) Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. § 404.1510.

```
            404, Subpart P, Appendix 1?  If so, the claimant is
            found disabled.  If not, proceed to step four.
      (4)   Is the claimant capable of performing his past work?  If
            so, the claimant is found not disabled.  If not, proceed
            to step five.
      (5)   Is the claimant able to do any other work?  If not, the
            claimant is found disabled.  If so, the claimant is
            found not disabled.
```

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); 20 C.F.R. § 404.1520(a)(4).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54 (citing Tackett). Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity,[2] age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520(g). The Commissioner may do so by the testimony of a vocational expert or by reference to the

---

[2] Residual functional capacity is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 404.1545(a).

Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing <u>Tackett</u>). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable, and the ALJ must take the testimony of a vocational expert. <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000) (citing <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## IV.
## THE ALJ'S DECISION

At the first step of the sequential evaluation process, the ALJ observed that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of his disability. (AR 11). Next, the ALJ found that Plaintiff had the following severe impairments: a seizure disorder, a "right knee disorder," hepatitis C, morbid obesity, polysubstance abuse and dependence, depressive disorder, anxiety disorder, and antisocial personality traits. (<u>Id.</u>).

At the third step, the ALJ found that Plaintiff's impairments, including the substance use disorders, met sections 12.04, 12.06, and 12.09 of the "Listing of Impairments" set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 12). The "paragraph A" criteria were satisfied because Plaintiff has depressive disorder, anxiety disorder, antisocial personality traits, and substance abuse. (<u>Id.</u>). The "paragraph B" criteria were satisfied because Plaintiff's mental impairments, including substance abuse, cause marked limitations in two functional areas; social functioning and concentration, persistence, and

pace; and repeated episodes of decompensation. (AR 13). However, the ALJ determined that Plaintiff's abuse of heroin and cocaine was "material to his disability," (id.), and that if Plaintiff stopped his substance using these substances, his remaining limitations would be "severe," but would not meet or equal any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 13-14).

In the fourth step of his analysis, the ALJ weighed the medical evidence to determine Plaintiff's RFC. (AR 15-19). The ALJ concluded that Plaintiff was capable of performing "medium work"[3] with several limitations. (AR 15). The ALJ found Plaintiff occasionally able to climb ramps and stairs but not ladders, ropes, or scaffolds; balance, bend, stoop, crouch, and kneel; and push and pull foot controls with the right leg. (Id.). Additionally, the ALJ determined Plaintiff should avoid exposure to hazards such as unprotected heights, fast-moving machinery, and pools of water; should not perform any work requiring binocular vision or depth perception; and not perform any work involving safety operations or responsibility for the safety of others. (Id.).

In analyzing Plaintiff's RFC, the ALJ considered Plaintiff's subjective allegations, but did not find them fully credible, as Plaintiff had a history of substance abuse and was a recidivist felon. (AR 16-17). Plaintiff had been arrested "about 30 times" and incarcerated on four separate occasions for drug possession. (AR 16, 161). Furthermore, Plaintiff was repeatedly inconsistent about

---

[3] The Agency's formulation of "medium work" involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).

reporting his drug use.  On July 22, 2008, Plaintiff reported that he had been sober for seventeen months.  (AR 477).  However, four months earlier, on March 31, 2008, Plaintiff reported that he was currently using heroin and cocaine on the weekends.  (AR 433).  Plaintiff further claimed that "he was clean except for 2 times, in December 2008/January 2009 and May/June 2007."  (AR 16).  The ALJ pointed out that the record did not support this claim, as evidence showed that Plaintiff was also using drugs in July, August, and September 2008, only a few months before Plaintiff's March 2009 hearing.  (Id.; AR 366, 352, 374, 377, 382).  The ALJ noted that Plaintiff admitted using heroin four months prior to the hearing.  (AR 15).

The ALJ rejected the need for greater restrictions recommended by Plaintiff's treating physician, Dr. Gillian Friedman, because "the doctor failed to cite any medical testing results or objective observations to support her conclusions as to [Plaintiff's] residual functional capacity.  The doctor mentions 'past' X-ray imaging showing severe arthritis, but those film results are not part of the record.  In fact, none of Dr. Friedman's files are part of the record."  (AR 18).

In the fifth step, the ALJ determined, based on testimony by the VE, that Plaintiff was able to perform his past work as a warehouse laborer.  (AR 19).  According to the ALJ, the work "does not require the performance of work-related activities precluded by the residual functional capacity Plaintiff would have if he stopped his substance abuse."  (Id.).  Because the ALJ determined that Plaintiff would not be disabled if he stopped the substance use, he found Plaintiff was not

disabled within the meaning of the Social Security Act at any time since his application. (Id.).

## V.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

**VI.**

**DISCUSSION**

Plaintiff claims that the ALJ's decision should be reversed for four reasons. (See Memorandum in Support of Plaintiff's Complaint ("Complaint Memo.") at 2, 4, 7, 8). First, Plaintiff contends that the ALJ failed to properly develop the record, as despite his finding that "none of Dr. Friedman's files are part of the record," the ALJ did not contact Dr. Friedman to attempt to acquire these records. (Id. at 2; AR 18). Second, Plaintiff contends that remand is required because the ALJ failed to properly consider the opinion of Dr. Friedman, Plaintiff's treating physician. (Id. at 4). Third, Plaintiff contends that the ALJ failed to properly assess Plaintiff's RFC. (Id. at 7). Finally, Plaintiff contends that the ALJ erred by finding Plaintiff capable of performing his past relevant work. (Id. at 8). For the reasons discussed below, the Court disagrees with each of Plaintiff's contentions.

**A.  The ALJ's Rejection Of The Treating Physician's Opinion Is Supported By Substantial Evidence In The Record**

Plaintiff's first and second claims are related. Plaintiff's first claim, that the ALJ failed to develop the record by not attempting to obtain Dr. Friedman's files, and Plaintiff's second claim, that the ALJ failed to properly consider Dr. Friedman's opinion, both hinge on the ALJ's erroneous statement that "none of Dr. Friedman's files are part of the record." (See Complaint Memo. at 3, 4; AR 18). The Court agrees that this statement was erroneous, but finds that it was harmless error.

Although a treating physician's opinion is entitled to great deference, it is "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." Lester v. Chater, 81 F.3d 821, 830 (9th. Cir. 1995); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). If the treating physician's opinion is contradicted by another doctor, the ALJ may reject this opinion after providing specific, legitimate reasons, supported by substantial evidence in the record. Lester, 81 F.3d at 830. When they are properly supported, the opinions of physicians other than treating physicians, such as examining physicians and nonexamining medical experts, may constitute substantial evidence upon which an ALJ may rely. See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).

Here, Plaintiff takes issue with the ALJ's statement that "none of Dr. Friedman's files are part of the record." Both parties agree that this statement was erroneous because Dr. Friedman's records "were included in the transcript and reviewed by the ALJ." (Memorandum in Support of Defendant's Answer ("Defendant's Memo.) at 3; see also AR 340-344, 347, 348, 386 (Dr. Friedman's records)). It appears that this comment by the ALJ was an inadvertent misstatement, because the ALJ did, in fact, look at Dr. Friedman's records and addressed them elsewhere in his decision. (See ALJ Decision at 18-19). This error was therefore

harmless.  <u>Carmickle v. Commissioner of the Social Security Administration</u>, 533 F.3d 1155, 1162 (9th Cir. 2008).

The ALJ gave specific and legitimate reasons to discount Dr. Friedman's decision.  The ALJ observed that Dr. Friedman "failed to cite any medical testing results or objective observations to support her conclusions," and her opinion "conflict[ed] with the substantial evidence of record."  (AR 18).  These two reasons are supported by the record.  Accordingly, they are specific and legitimate reasons.

The ALJ determined that if Plaintiff stopped his repeated substance abuse, his mental limitations would be non-severe and he would not have a physical impairment that would meet or equal any listing.  (AR 13-14).  Dr. Friedman, on the other hand, limited Plaintiff to lifting 10 pounds occasionally and frequently, and standing or walking less than two hours a day in an eight hour workday.  (AR 531).  Furthermore, Dr. Friedman stated that Plaintiff had moderate to marked limitations in every mental work capacity category.  (AR 528-29).  Dr. Friedman based this assessment on Plaintiff's representations that by August 28, 2008 Plaintiff's drug addiction was in "substantial full remission."  (AR 342, 531).  However, in a counseling interview with a different doctor on August 29, 2008, Plaintiff's drug use was described as "current."  (AR 352).  In September 2008, Plaintiff's social worker informed the court that Plaintiff had admitted to using heroin and cocaine regularly since his last court appearance.  (AR 16, 374).  This evidence undermines Dr. Friedman's statement that Plaintiff's drug addiction was in "substantial full remission," which formed the basis of her

assessment of Plaintiff's capabilities. (AR 342). Thus, it was not error for the ALJ to give Dr. Friedman's opinion little weight.

The ALJ specifically discusses the findings of five doctors in its opinion: Dr. Smith, an examining psychologist; Dr. Konia, an examining psychologist who testified at the hearing; Dr. Lin, a consultative internal medical examiner; Dr. Ross, a state medical consultant; and Dr. Friedman, Plaintiff's treating physician. (AR 17-18). Both Dr. Smith and Dr. Konia found Plaintiff would have "no limitations and no impairments" if he abstained from drug use. (AR 17-18, 36). Dr. Lin stated that Plaintiff could "stand or walk for 4 hours in an 8 hour workday" and "lift or carry 50 pounds occasionally and 25 pounds frequently." (AR 17). Dr. Ross reported that Plaintiff could lift "20 pounds occasionally and 10 pounds frequently" and "stand and walk 6 hours in an 8 hour workday." (AR 18). Dr. Friedman, on the other hand, limited Plaintiff to lifting 10 pounds occasionally and frequently, and standing or walking less than two hours a day in an eight hour workday. (Id.).

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in the evidence. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). This Court may not substitute its own judgment for that of the ALJ as long as the ALJ's determination is supported by substantial evidence. 42 U.S.C. § 405(g). In this case, the ALJ could properly have given the opinion of Dr. Friedman "little weight" based solely on the "substantial evidence" of the conflicting medical evidence of three of the five medical experts. See, e.g., Tonapetyan, 242 F.3d at 1149.

In sum, Plaintiff's first contention, that the ALJ failed to properly develop the record, is contradicted by the fact that the ALJ simply misspoke when he said that "none of Dr. Friedman's files are part of the record." (AR 18). Although this statement was erroneous, the ALJ's error was ultimately harmless. In giving Dr. Friedman's opinion little weight, the ALJ permissibly resolved the conflict between the medical experts based on the substantial evidence of record. Therefore, the Court disagrees with Plaintiff's first and second claims. No remand is required.

**B.     The ALJ Properly Determined Plaintiff's Residual Functional Capacity**

Plaintiff's third claim is that the ALJ improperly assessed Plaintiff's RFC by omitting aspects of Dr. Lin's findings from the RFC. (Complaint Memo. at 7). Specifically, Plaintiff contends that the ALJ erred by not including Dr. Lin's RFC limitation that Plaintiff can only "stand or walk for 4 hours in an 8 hour workday" (Id.; AR 17). This Court disagrees.

The ALJ gave significant weight to the opinion of Dr. Lin. (AR 17). As Dr. Lin recommended, the ALJ's RFC stated Plaintiff was capable of lifting or carrying 50 pounds frequently and 25 pounds occasionally. (AR 15, 17, 191). However, the ALJ did not adopt the further limitation that Dr. Lin recommended: that Plaintiff could only stand or walk for four hours in an eight hour workday. (AR 15, 17, 192).

In this case, the ALJ adopted that portion of Dr. Lin's opinion that he found was "well-supported by the medical evidence" and "not inconsistent with other substantial evidence of record." (AR 18). Three of the five medical experts, Dr. Smith, Dr. Ross, and Dr. Konia, rejected Dr. Lin's standing and walking limitation. (AR 17-18). Therefore, the ALJ could properly find that this portion of Dr. Lin's opinion was not supported by the record and give it little weight.

It is not necessary for the ALJ to agree with everything an expert witness says in order to hold that his testimony contains substantial evidence, where the bases for the opinion were supported by objective medical evidence. Magallanes, 881 F.2d at 753. The ALJ is the "final arbiter with respect to resolving ambiguities in the evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041-42 (9th Cir. 1995). Therefore, the ALJ did not err in disregarding portions of Dr. Lin's opinion when assessing the Plaintiff's RFC.

**C.   The ALJ Properly Determined That Plaintiff Could Perform His Past Relevant Work**

In his forth claim, Plaintiff contends that the ALJ erred in concluding that Plaintiff could perform his past relevant work. (See Complaint Memo. at 8). According to Plaintiff, the ALJ "improperly relied on the vocational expert's (VE) testimony" and "failed to properly consider the actual physical and mental demands of Plaintiff's past relevant work as a warehouse laborer." (Id.). This Court disagrees.

Plaintiff has the burden of showing that he could not perform the job as actually performed or as generally performed. See Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986) (at step four of the sequential evaluation process, claimant has burden of proving an inability to return to his former "type of work" and not just to his former job). However, the ALJ still has a duty "to make the requisite factual findings to support his conclusion." Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001). The ALJ performs this duty by comparing the claimant's RFC to the physical and mental demands of the claimant's past relevant work. Id. at 844-45; 20 C.F.R. §§ 404.1520(f), 416.920(f). To determine the general demands of the claimant's past relevant work, the ALJ should refer to the Dictionary of Occupational Titles ("DOT"). Id. at 845 (citing Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)). Although the ALJ may rely on a vocational expert to determine the actual demands of the claimant's past relevant work, it should be noted that if an ALJ determines that an individual can return to his past relevant work, no VE testimony is necessary. See Pinto, 249 F.3d at 844; Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996).

Here, the ALJ made all requisite findings. The ALJ first determined that, based on all of the evidence, Plaintiff had the RFC to perform medium work with some environmental restrictions. (AR 15). The ALJ then properly relied on the VE, who used the DOT to determine the physical and mental demands of Plaintiff's past work as a warehouse laborer. The VE stated that based on the Dictionary of Occupational Titles ("DOT"), Plaintiff's past work as a warehouse laborer was unskilled and required light to medium exertion. (AR 146; DOT No.

15

1 922.687.058).  Plaintiff, on the other had, contends that his past work
2 actually required him to walk for seven hours and stand for six hours
3 in an eight hour day.  (AR 116).

5    However, even if a plaintiff cannot perform the functional demands
6 and duties actually required by his former job, if he can perform the
7 demands and duties as generally required by employers, he is not
8 disabled.  See 20 C.F.R. § 416.960(b)(2) ("[A] vocational expert or
9 specialist may offer expert opinion testimony in response to a
10 hypothetical question about whether a person with the physical and
11 mental limitations imposed by the claimant's medical impairment(s) can
12 meet the demands of the claimant's previous work, either as the claimant
13 actually performed it or as generally performed in the national
14 economy."); SSR 82-61 ("Under this test, if the claimant cannot perform
15 the excessive functional demands and/or job duties actually required in
16 the former job but can perform the functional demands and job duties as
17 generally required by employers throughout the economy, the claimant
18 should be found to be 'not disabled.'").

20    Accordingly, based on the testimony of the VE, the ALJ properly
21 found that Plaintiff is capable of performing his past relevant work as
22 a warehouse laborer as generally performed in the economy, and thus is
23 not disabled. (AR 19-20).
24 \\
25 \\

16

**VII.**

**CONCLUSION**

Pursuant to sentence four of 42 U.S.C. § 405(g),[4] IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: August 6, 2010.

_____/S/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

---

[4] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."